UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRENA TORRES, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PICK-A-PART AUTO WRECKING (d/b/a Pick-A-Part); and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:16-cv-01915-DAD-BAM<br><br><br>ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. No. 13) |

This matter came before the court on November 7, 2017, for hearing on plaintiff's unopposed motion for preliminary approval of a class action settlement. (Doc. No. 13.) Attorney Chant Yedalian appeared on behalf of plaintiff Cirena Torres, and attorney Ted Galfin appeared on behalf of Pick-A-Part Auto Wrecking. Following the hearing, the court directed the plaintiff to submit a supplemental declaration with respect to the pending motion. (Doc. No. 17.) On November 13, 2017, plaintiff and defendant each submitted supplemental declarations in support of the motion for preliminary approval. (Doc. Nos. 18, 19). Defendant submitted an additional declaration in support of the motion on November 22, 2017. (Doc. No. 20.) For the reasons set forth below, the court will grant the plaintiff's unopposed motion for preliminary approval of class action settlement.

## BACKGROUND

On December 22, 2016, plaintiff filed a class action complaint against Pick-A-Part Auto Wrecking ("Pick-A-Part") and Does 1 through 10. (Doc. No. 1.) The complaint alleges that defendant violated the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §§ 1681 *et seq.* (*Id.* at 2.) FACTA provides in relevant part that "no person that accepts credit cards or debit cards for the transaction of business shall print . . . the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g).

For several years and ending on January 31, 2016, defendant Pick-A-Part operated a motor vehicle wrecking and recycling facility, whose business included maintaining an inventory of used vehicles, from which retail customers could dismantle parts to purchase. (Doc. No. 6 at 2.) Plaintiff alleges that defendants willfully violated FACTA by printing the expiration date on receipts provided to credit card and debit card cardholders transacting business with defendant. (Doc. No. 1 at 2.)

On October 2, 2017, plaintiff filed an unopposed motion for preliminary approval of a class action settlement. (Doc. No. 13). Plaintiff seeks to represent a class, certified for the purposes of settlement only, composed of "[a]ll consumers who, at any time during the period December 22, 2014 to October 28, 2015, were provided an electronically printed receipt at the point of a sale or transaction at Pick-A-Part (located at 2274 E. Muscat Avenue, Fresno, CA 93725), on which receipt was printed the expiration date of the consumer's credit card or debit card." (*Id.* at 3.)

Plaintiff seeks an order: (i) certifying the settlement class, with appointment of plaintiff as class representative, appointment of attorney Chant Yedalian as class counsel, and appointment of Atticus Administration, LLC as the settlement administrator; (ii) preliminarily approving the settlement agreement; (iii) approving the proposed form and method of notice to the settlement class; and (iv) scheduling the hearing date for the final approval of the class settlement. (*Id.* at 1).

## LEGAL STANDARD

Rule 23 mandates that, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P.

23(e). The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .
>
> Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, it has been recognized when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

When parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. 2014); *West v. Circle K Stores, Inc.*, No. CIV. S-04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, plaintiff moves for preliminary approval of a class settlement and preliminary class certification. (Doc. No. 13.) The motion is unopposed. Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class].").

**ANALYSIS**

**I.  Preliminary Fairness Evaluation**

Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *Bluetooth*, 654 F.3d at 946. In particular, preliminary approval of a settlement and notice to the proposed class is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies,

4

does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### A. Negotiations

The court must first consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). In addition, participation in mediation "tends to support the conclusion that the settlement process was not collusive." *Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *8 (E.D. Cal. July 6, 2015) (citation omitted).

Here, the parties negotiated directly and did not participate in mediation. (Doc. No. 15 at ¶¶ 2–3.) Direct negotiations may be reasonable in situations where, as may be the case here, the relatively low value of the action does not justify the cost of mediation. *See Millan*, 310 F.R.D. at 613 ("In light of the cost of mediation and the relatively low value of the action, the decision to negotiate directly is reasonable."). Nonetheless, when a settlement is achieved without third party mediation, the presumption of non-collusion does not apply. *Id.* ("[B]ecause the negotiation was direct and the settlement took place prior to certification, the Court reviews this agreement without a presumption of non-collusion.").

Although the presumption of non-collusion does not apply here, the court is satisfied that the parties' negotiation in this case constituted genuine, informed, arm's length bargaining.

1    Plaintiff asserts that "a substantial amount of information was obtained and exchanged, including
2    specific figures concerning transactions during the Settlement Class Period." (Doc. Nos. 13 at 19;
3    15 at ¶ 16.) Counsel for both parties made additional representations at oral argument regarding
4    the type of information obtained, and the difficulty of obtaining such information. Based on these
5    representations, the court finds that the process at arriving at the settlement was procedurally fair.

      B.      <u>Obvious Deficiencies</u>

A proposed settlement does not meet the test for preliminary fairness if there are any obvious deficiencies in the proposed agreement. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. The proposed settlement provides that Pick-A-Part will establish a non-reversionary cash fund in the amount of $195,000, from which the class counsel's attorney's fees and costs, an incentive payment to the class representative, and administration costs will be paid. (Doc. No. 13 at 3.) The proposed settlement provides for the payment of attorney's fees and costs of up to $65,000, plus an award of class counsel's litigation costs of up to $3,000. (*Id.* at 5–6.) The settlement provides that the class representative will receive an incentive payment of up to $4,000. (*Id.* at 5.) Plaintiff further estimates that administration costs will be approximately $12,000. (Doc. No. 15-1 at 2.)

The remaining funds will be divided by the total number of class members who submit a valid and timely claim, but not to exceed $250 per class member. (*Id.* at 2.) Each class member may only submit one claim, regardless of how many credit or debit card transactions he or she engaged in with defendant during the settlement class period. (*Id.* at 3.) The proposed settlement provides no reversion to Pick-A-Part; any residual funds would be given *cy pres* to Legal Assistance for Seniors. (Doc. No. 13 at 4.)

The settlement provides a means for class members to exclude themselves from the settlement. (Doc. No. 15-1 at 4.) The release of liability appears reasonably tailored to the claims presented in the action. (*Id.* at 6.) In addition, the settlement agreement provides that the validity and enforceability of the agreement shall not be affected by any intervening change of law. (*Id.* at 7.) The court is satisfied there are no obvious deficiencies with the proposed settlement.

/////

### C. Preferential Treatment

In making a preliminary fairness determination, the court must assure itself that the proposed settlement does not provide preferential treatment to certain members of the class or the named plaintiffs. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. The court will examine the attorneys' fee provision, incentive payment, and *cy pres* distribution in turn.

#### i. *Attorneys' Fees*

Federal Rule 23(h) provides that "[i]n a certified class action, the court may award attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The district court "must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petrol. Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999). The Ninth Circuit has approved two methods of calculating attorney's fees. *See Hanlon*, 150 F.3d at 1029. In "common-fund" cases where the settlement creates a fund to be distributed to the class, "the district court has discretion to use either a percentage or lodestar method." *Id.* The "lodestar" calculation takes the number of hours reasonably expended and multiplies that by a reasonable hourly rate. *Id.* (citation omitted). The lodestar method is typically used where the settlement is primarily injunctive relief, and the net value of the settlement is difficult to gauge. *Id.* The percentage method, in contrast, awards the attorneys a percentage of the fund "sufficient to provide class counsel with a reasonable fee." *Id.* (citation omitted). The Ninth Circuit has established 25 percent as the benchmark for attorney's fees under this latter method. *Id.* (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Courts may deviate from this 25 percent benchmark when there are special circumstances justifying a departure. *Six (6) Mexican Workers*, 904 F.2d at 1311. Special circumstances may include, for example:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted).

Under the proposed settlement agreement now before the court, plaintiff seeks an award of up to $65,000 for attorney's fees plus an award of $3,000 for class counsel's litigation costs, both of which would be paid from the settlement fund. (Doc. No. 13 at 5–6.) This $65,000 figure would represent 33.3 percent of the overall settlement fund. This fee amount is above the benchmark for this circuit. *See Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same). However, the proposed percentage for attorney's fees is not inherently unreasonable as an upper bound. Accordingly, the court will grant preliminary approval. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (observing that percentage awards of between twenty and thirty percent are common); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). In connection with the final fairness hearing, however, the court will consider any objections as well as the evidence presented by counsel in determining whether the award of an above-benchmark percentage in attorney's fees is reasonable in this case. *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (noting that an explanation is necessary when the district court departs from the twenty-five percent benchmark).

      ii. *Incentive Award*

While named plaintiffs are eligible to receive incentive payments, a court must "evaluate their awards individually" for any indication that "the agreement was reached through fraud or collusion." *Staton*, 327 F.3d at 975. In determining whether an incentive payment is excessive, a court should balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.*

Here, plaintiff has requested an incentive payment of up to $4,000, subject to the approval of the court. (Doc. No. 13 at 5.) This would represent approximately 2 percent of the overall settlement. The maximum settlement recovery a class member could receive under the settlement

proposed here is $250. (Doc. No. 13 at 3.) Therefore, an incentive award of $4,000 is 16 times the maximum amount that a class member could expect to receive in this litigation. Courts in this circuit have previously approved incentive awards in this range, and the court finds that the proposed incentive award is "not outside the realm of what has been approved as reasonable by other courts." *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (and cases cited therein); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) (approving an incentive award of $7,500 to each class representative).

The requested incentive payment is thus approved on a preliminary basis. At the final fairness hearing, the court will review plaintiff's evidence in determining whether the requested incentive award is warranted here—i.e., evidence of the specific amount of time plaintiff spent on the litigation, the particular risks and burdens carried by plaintiff as a result of the action, or the particular benefit that plaintiff provided to counsel and the class as a whole throughout the litigation. *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013).

    iii. Cy Pres *Distribution*

The parties predict that, due to the nature of this case and defendants' lack of information regarding absent class members, few claims will be made and a residue will result. (Doc. No. 13 at 4.) Plaintiff's motion indicates that any such residue will be distributed *cy pres* to Legal Assistance for Seniors ("LAS"), a 501(c)(3) charity. (*Id.*) A *cy pres* remedy is one where the class members receive an indirect, rather than a direct, benefit. *Lane*, 696 F.3d at 819. *Cy pres* awards "must be guided by (1) the objectives of the underlying statutes and (2) the interests of the silent class members." *Nachshin v. AOL*, 663 F.3d 1034, 1040 (9th Cir. 2011).

At oral argument, the court requested additional information from plaintiff regarding how a *cy pres* award to LAS would likely benefit the class members or promote the underlying objectives of FACTA. (Doc. No. 17.) On November 13, 2017, plaintiff submitted a declaration from James Treggiari, the Executive Director of LAS, stating that seniors "are a class of consumers who are particularly vulnerable to consumer fraud, including identity theft scams."

9

(Doc. No. 18 at ¶ 5.) In his declaration, Mr. Treggiari further attests that LAS provides legal representation and other advocacy services for seniors who fall victim to financial elder abuse, and provides counseling and community education to seniors to help protect them from consumer fraud and identity theft, including credit card or debit card fraud and other scams. (*Id.* at ¶¶ 6–8.) Based on this supplemental information, the court is satisfied that LAS is an appropriate beneficiary of the *cy pres* award in this case.

### D. Range of Possible Approval

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

Here, the proposed settlement is for $195,000. Plaintiff does not provide an estimate of how much she would expect to be awarded were she to succeed on all claims at trial. Plaintiff does note, however, that the settlement's maximum award of $250 per class member amounts to 250 percent of the minimum statutory damages ($100), and 25 percent of the maximum statutory damages ($1000).

If each of the 4,422 credit card and debit card transactions represents unique individuals, plaintiff and the class would be entitled to minimum statutory damages of $100 per class member, or $442,200 total. If each individual received the maximum statutory damages amount of $1000, defendant's maximum liability would be $4,422,000. The proposed settlement of $195,000 thus represents approximately 44 percent of plaintiff's minimum possible recovery, and 4.4 percent of plaintiff's maximum possible recovery. Plaintiff notes and acknowledges the risks involved in proceeding with this litigation, given the mixed case law on standing in FACTA class actions, and

disputes between the parties regarding the willfulness of defendant's conduct and the appropriateness of class certification other than for the purpose of settlement. (Doc. No. 13 at 17–19.) Because of the concrete risks attendant with this litigation, the court finds that the amount offered in settlement weighs in favor of preliminary approval.

## II. Preliminary Certification of Class

In order to preliminarily certify a class, the court must find all of the requirements of rule 23(a) are met. *See Hanlon*, 150 F.3d at 1019. As a threshold matter, in order to certify a class, a court must be satisfied that:

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Fed. R. Civ. P. 23(a)).

Once each of these threshold requirements set out under Rule 23(a) is satisfied, a class may be certified if the class action satisfies the predominance and superiority requirements of Rule 23(b)(3). *See Amchem*, 521 U.S. at 615 ("To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"). First, the common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute

on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As one district court has summarized:

> In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context.

*Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *6 (E.D. Cal. July 2, 2015) (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

Plaintiff seeks certification for the following class: "All consumers who, at any time during the period December 22, 2014 to October 28, 2015, were provided an electronically printed receipt at the point of a sale or transaction at Pick-A-Part (located at 2274 E. Muscat Avenue, Fresno, CA 93725), on which receipt was printed the expiration date of the consumer's credit card or debit card." (Doc. No. 13 at 3.)

A. Rule 23(a) Requirements

i. *Numerosity*

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class is comprised of as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810) (discussing Ninth Circuit thresholds for numerosity); *In re Itel Sec. Litig.*, 89 F.R.D. at 112.

Here, plaintiff alleges that there were 4,422 credit and debit card transactions with defendant during the settlement class period. (Doc. Nos. 13 at 7; 14 ¶ 3.) Plaintiff argues that

from this figure, the court may infer a "sheer number of class members" for which joinder would be impracticable. (Doc. No. 13 at 7.) It is certainly possible that each of these transactions represents a unique customer, but even assuming the more likely scenario that this figure includes repeat customers of defendant, it is still reasonable to conclude that the putative class is sufficiently numerous that joinder would be impracticable. *See, e.g.*, *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-cv-2578-DHB, 2016 WL 7242092, at *4 (S.D. Cal. Dec. 13, 2016) (finding numerosity in a FACTA class action based on 100,000 noncompliant receipts); *In re Toys R Us - Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 368 (C.D. Cal. 2013) (finding numerosity in a FACTA class action based on more than 29 million noncompliant receipts).

    ii.  *Commonality*

  Commonality is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, plaintiff's claims must depend upon a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

  Here, the proposed class members allegedly suffered the same injury: they were all provided an electronically printed receipt upon transacting business with defendant that allegedly printed the expiration date of their credit card or debit card, in violation of FACTA. Defendant's alleged unlawful practice thus affected all of the putative class members. Accordingly, the proposed settlement class meets the commonality requirement.

    iii.  *Typicality*

  Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each

13

class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, plaintiff's claims arise from the same facts of those of the class. She purchased vehicle parts from defendants and received a receipt containing the expiration date of the credit card or debit card she used. (Doc. No. 13 at 9.) Moreover, plaintiff bases her claim on the same legal theories as those of the class, and also seeks the same relief as all class members. (*Id.*) Therefore, plaintiff meets the typicality requirement.

    iv. *Adequacy*

For adequacy to be met, the representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prong involves two inquiries: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462; *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

Here, plaintiff and her counsel have no conflicts of interest with other class members. Plaintiff's claims are typical of those of other class members, and plaintiff and the class members share the common goal of protecting themselves and other consumers against identity theft and credit and debit card fraud. (Doc. Nos. 13 at 9–10; 15 at ¶ 53.) Furthermore, plaintiff's counsel has experience in class action litigation, including lawsuits involving violations of FACTA. (Doc. Nos. 13 at 10; 15 ¶¶ 17–18, 31–51.) Therefore, plaintiff and her counsel meet the adequacy requirement.

/////

/////

B. Rule 23(b) Requirements

Class actions under 23(b)(3) must meet two additional requirements. First, the common questions must predominate over individual questions; and second, the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. *Predominance*

Predominance requires that common questions predominate over individual questions. Fed. R. Civ. P. 23(b)(3). In contrast to Rule 23(a)(2)'s commonality requirement, which can be satisfied by even a single question, predominance under Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022.

Here, common issues easily predominate over the class members' individual claims. As plaintiff notes, whether defendant violated FACTA willfully—as is required under 15 U.S.C. § 1681n to entitle class members to the award of statutory damages—is a central issue involving defendant's conduct, which applies uniformly to all class members. (Doc. No. 13 at 10.) Each class member's claim is also predicated upon the same alleged conduct by defendant, that is, the printing of non-compliant receipts. Where, as here, "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F. 3d at 1022.

### b. *Superiority*

Superiority requires that the class action device is superior to individual actions. Rule 23(b)(3)(A)–(D) provides a list of four factors to assess whether this requirement is met, including the interest of the members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

/////

15

Here, the individual claimants likely have no interest in controlling the prosecution of their own actions, because any individual legal costs could far outstrip any potential recovery. A class member who pursues an individual action for damages can recover actual damages, if any, or statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n. This likely deters individuals from pursuing valid claims, where the cost of litigation significantly outweighs any potential recovery. Moreover, the parties before the court have stated that they are not aware of any other pending litigation concerning the violations alleged in this case. (Doc. No. 13 at 13.) Thus, superiority is satisfied here. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 710–11 (9th Cir. 2010) (holding that the district court abused its discretion in denying certification to a FACTA class based upon its application of the superiority requirement); *but see Rowden v. Pac. Parking Sys., Inc.*, 282 F.R.D. 581, 585–87 (C.D. Cal. 2012) (holding that FACTA class was not ascertainable and class action was not superior to other methods of resolving the parties' controversy because class members had an effective alternative remedy in the form of an administrative grievance).

### III. Proposed Class Notice and Administration

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted). Moreover, in class actions certified under Rule 23(b)(3), notice should be the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), in a manner that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, plaintiff provides a proposed notice ("Newspaper Notice") that summarizes the claims in the litigation, who qualifies as a class member, and the options available to class

16

| 1 | members to either remain in the class or opt out.  (Doc. No. 15-1, Ex. B.)  Plaintiff proposes that
| 2 | Newspaper Notice will be made by publication in the Fresno Bee on three separate dates, the first
| 3 | to occur within 20 days of the court's preliminary approval, the second to occur within 30 days of
| 4 | the first date, and the third date to occur within 70 days of the first date.  (Doc. No. 15-1 at 4.)
| 5 | The settlement also provides for the creation of a settlement website, which will house an online
| 6 | long-form notice ("Full Notice").  (*Id.*)  The full notice provides a description of the settlement
| 7 | terms; the options available to class members, including objecting to the settlement and speaking
| 8 | at the fairness hearing; the attorneys' fee amount; and the time, place, and date of the final
| 9 | approval hearing before this court.  (Doc. No. 15-1, Ex. C.)  The newspaper notice, settlement
| 10 | website, and full notice will include the toll-free telephone number of the settlement
| 11 | administrator.  (Doc. No. 15-1 at 4.)

At oral argument, the court inquired whether the parties had considered posting notice at 2274 E. Muscat Avenue, Fresno, CA 93725, the location of defendant's former business premises.  Counsel for both parties indicated that they had not contacted the new owner of the premises regarding such notice.  On November 13, 2017, counsel for defendant Ted A. Galfin submitted a declaration attesting that he contacted Robert L. Young, legal counsel for Vehicle Recycling Services, LLC ("VRS"), the current occupant of the premises formerly occupied by the defendant.  (Doc. No. 19, at ¶ 2.)  According to Galfin's declaration, VRS would not consent to the posting of a public notice of the proposed settlement on the defendant's former business premises.  (*Id.* at ¶ 3.)

In light of this supplemental information, the court is satisfied that newspaper publication constitutes the best notice practicable under the circumstances and is reasonably calculated to apprise interested parties of the settlement.  *See, e.g.*, *Brown*, 2016 WL 7242092, at *8–9 (approving publication of notice in FACTA class action via newspaper, defendant's website, and a settlement website); *In re Toys R Us*, 295 F.R.D. at 448–49 ("Because Toys does not have the mailing addresses of purchasers who used debit or credit cards during the class period, the court approved notice by means of publication and a settlement website. . . . When the court certifies a nationwide class of persons whose addresses are unknown, notice by publication is reasonable.");

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ("Because defendants do not have a list of potential class members, the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the Lenox settlement.").

Plaintiff proposes the following implementation schedule:

| Event | Time |
|---|---|
| Deadline for defendant to establish non-reversionary cash fund | No later than three business days after the court enters an order granting preliminary approval of the settlement |
| Publication of newspaper notice (x3) | Within 20 days after the court's preliminary approval of the settlement; within 30 days of the first date; and within 70 days of the first date |
| Settlement Administrator will provide the full notice on the settlement website | Within 10 days after the court's preliminary approval of the settlement |
| Deadline for settlement class members to submit a claim form | Within 180 days from the date full notice is posted on the settlement website |
| Deadline for settlement class members to object to or opt out of the settlement | 60 days after the first date of posting the full notice to the settlement website |
| Deadline for plaintiff to file a motion for final approval of the settlement and a motion for an award of attorney's fees and costs and for the class representative's incentive award | At least 30 days before the final fairness hearing |
| Deadline for settlement class members to object to class counsel's motion for an award of attorney's fees and costs and/or the class representative's motion for incentive award | 21 days before the final fairness hearing |
| Deadline for settlement class members to file a Notice of Intention to Appear at the final fairness hearing | No later than 21 calendar days before the fairness hearing if the appearance concerns class counsel's motion for an award of attorney's fees and costs and/or the class representative's motion for incentive award; no later than 60 calendar days after the first date of posting the full notice for any other matter concerning the settlement agreement |
| | |

| Distribution of settlement checks | Beginning no earlier than 30 days after the settlement date; and ending no later than 60 days after the last day to submit claims or the settlement date, whichever is later |
|---|---|
| Settlement Administrator shall issue checks to class counsel and the class representative | Within 10 days of the settlement date |

The court finds that the notice and the manner of notice proposed by plaintiff meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and 29 U.S.C. § 216(b).

**CONCLUSION**

For the reasons stated above,

1. Plaintiff's motion for preliminary approval of class action settlement (Doc. No. 13) is granted;
2. Preliminary class certification under Rule 23 is approved;
3. Plaintiff's counsel, Chant Yedalian, is appointed as class counsel;
4. The named plaintiff, Cirena Torres, is appointed as class representative;
5. The proposed notice and claim form conform with Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) and are approved;
6. Atticus Administration, LLC is approved as claims administrator;
7. The proposed settlement detailed herein is approved on a preliminary basis as fair and adequate;
8. The hearing for final approval of the proposed settlement is set for July 17, 2018, at 9:30 a.m. before the undersigned in Courtroom 5, with the motion for final approval of class action settlement to be filed twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230; and
9. Plaintiff's proposed settlement implementation schedule is adopted.

IT IS SO ORDERED.

Dated: **January 5, 2018**

UNITED STATES DISTRICT JUDGE