UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRENA TORRES, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>PICK-A-PART AUTO WRECKING (d/b/a Pick-A-Part); and DOES 1 through 10, inclusive,<br><br>        Defendants. | No. 1:16-cv-01915-DAD-BAM<br><br><br>ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES<br><br>(Doc. Nos. 22, 26) |

     This matter came before the court on July 17, 2018, for hearing on plaintiff's motion for final approval of a class action settlement and motion for attorneys' fees. (Doc. Nos. 22, 26.) Attorney Chant Yedalian appeared on behalf of plaintiff Cirena Torres and the class, and attorney Ted Galfin appeared telephonically on behalf of defendant. For the reasons that follow, the court will grant final approval of the class action settlement and will award attorneys' fees and costs requested by the parties.

## BACKGROUND

     On December 22, 2016, plaintiff filed a class action complaint alleging defendant violated the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §§ 1681 *et seq.* (Doc. No. 1 at 2.) FACTA provides in relevant part that "no person that accepts credit cards or debit cards

/////

1

for the transaction of business shall print . . . the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g).

For several years and ending on January 31, 2016, defendant operated a motor vehicle wrecking and recycling facility, whose business included maintaining an inventory of used vehicles, from which retail customers could dismantle parts to purchase. (Doc. No. 6 at 2.) Plaintiff alleges that defendant willfully violated FACTA by printing the expiration date on receipts provided to credit card and debit card cardholders transacting business with defendant. (Doc. No. 1 at 2.)

On June 30, 2017, the parties filed a joint status report indicating that a class-wide settlement had been reached. (Doc. No. 11.) On October 2, 2017, plaintiff filed an unopposed motion for preliminary approval of the class action settlement. (Doc. No. 13.) The court granted preliminary approval of the class action settlement on January 5, 2018. (Doc. No. 21.) In that order, the court conditionally certified the settlement class; appointed plaintiff as class representative; appointed Chant Yedalian as class counsel; appointed Atticus Administration, LLC as the settlement administrator; preliminarily approved the settlement agreement; approved the proposed form and method of notice to the settlement class; and set a hearing date for final approval. (*Id.*) The class conditionally certified by the court was designated as follows:

> All consumers who, at any time during the period December 22, 2014 to October 28, 2015, were provided an electronically printed receipt at the point of a sale or transaction at Pick-A-Part (located at 2274 E. Muscat Avenue, Fresno, CA 93725), on which receipt was printed the expiration date of the consumer's credit card or debit card.

(*Id.* at 2.)

Since preliminary approval was granted, notice of the settlement was published on January 25, February 22, and April 2, 2018 in the *Fresno Bee*, and via a settlement website containing a description of the settlement terms. (Doc. No. 22 at 3.) Settlement class members were provided until March 16, 2018 to opt-out of the class, object to the settlement agreement, and/or request permission to appear and speak at the final approval hearing. (*Id.* at 4.) No

/////

settlement class member has opted-out or objected, and none appeared at the final approval hearing. (*Id.*)

## FINAL CERTIFICATION OF CLASS ACTION

The court conducted an examination of the class action factors during its preliminary approval of the settlement and found certification warranted. (*See* Doc. No. 21 at 11–16.) Since no additional issues concerning whether certification is warranted have been raised, the court does not repeat its prior analysis here, but instead reaffirms it and finds final certification appropriate. The following class is certified:

> All consumers who, at any time during the period December 22, 2014 to October 28, 2015, were provided an electronically printed receipt at the point of a sale or transaction at Pick-A-Part (located at 2274 E. Muscat Avenue, Fresno, CA 93725), on which receipt was printed the expiration date of the consumer's credit card or debit card.

In addition, plaintiff Cirena Torres is confirmed as class representative, attorney Chant Yedalian is confirmed as class counsel, and Atticus Administration, LLC is confirmed as the settlement administrator.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). This requires that: (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5). The settlement agreement was previously filed on the court docket (Doc. No. 15-1; 25-1), and class members have been given an opportunity to object. The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

### A.      Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "Notice is satisfactory if it

3

'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

The court previously reviewed the notice of class certification at the preliminary approval stage and found it to be satisfactory. (Doc. No. 21 at 16–18.) Following the grant of preliminary approval, on January 15, 2018, the settlement administrator published the notice on the settlement website, which has remained continuously online and operational since that time. (Doc. No. 24 at 2.) The settlement administrator also published notice in the *Fresno Bee* on January 25, February 22, and April 2, 2018. (*Id.*) In a supplemental declaration filed on July 16, 2018, the settlement administrator advised the court that 884 claims were submitted, of which 55 are valid. (Doc. No. 28 at ¶ 6.) The parties and the court previously recognized that given the nature of this action and the lack of contact information for absent class members, few claims were likely to be made. (*See* Doc. No. 21 at 9, 17–18.) At the final fairness hearing, class counsel represented to the court that despite the high number of claims submitted, class counsel and the settlement administrator had conclusively determined that many claims were invalid as apparent duplicates, and further, that at least some of the valid claims accounted for multiple transactions out of the 4,422 transactions during the class period.

Given the above, the court concludes adequate notice was provided to the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (court need not ensure class members all

4

receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court accepts the reports of the settlement administrator and finds sufficient notice has been provided so as to satisfy Federal Rule of Civil Procedure 23(e)(1).

**B.      Final Fairness Hearing**

On July 17, 2018, the court held a final fairness hearing, at which class counsel and defense counsel appeared. As noted, no class members, objectors, or counsel representing the same appeared at the hearing. The court now determines that the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7. While the Ninth Circuit has observed that "strong judicial policy . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members," because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotations and citations omitted).

In particular, where a class action settlement agreement is reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotations omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to a certain amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may constitute error. *Id.* at 1224–25.

/////

1    1.    Strength of Plaintiff's Case

2        When assessing the strength of plaintiff's case in this context, the court does not reach

3    "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits

4    of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D.

5    Ariz. 1989). The court cannot reach such a conclusion, because evidence has not been fully

6    presented. *Id.* Instead, the court is to "evaluate objectively the strengths and weaknesses inherent

7    in the litigation and the impact of those considerations on the parties' decisions to reach these

8    agreements." *Id.*

9        Class counsel acknowledges that recovery on the merits in this case was far from certain,

10    given that other federal courts within the last two years have dismissed claims brought under

11    FACTA—including, notably, a Ninth Circuit decision issued after the court granted preliminary

12    approval in this case—finding that the plaintiffs failed to satisfy the concreteness requirement

13    because they made no showing of any actual injury. *See, e.g.*, *Bassett v. ABM Parking Servs.,*

14    *Inc.*, 883 F.3d 776 (9th Cir. Feb. 21, 2018); *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861

15    F.3d 76 (2d Cir. 2017); *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016).

16    Class counsel thus represents that further litigation would likely have caused delay, and posed

17    substantial risk to the plaintiff class if the case were to be later dismissed outright without any

18    recovery. (Doc. No. 22 at 18–20.) In addition, class counsel recognizes the difficulty in

19    demonstrating that defendant's conduct was willful, as is required to recover statutory damages

20    under 15 U.S.C. § 1681n. (*Id.* at 20–21.) Defendant, for its part, "vigorously denie[s]" that its

21    conduct was willful. (*Id.*) Therefore, while plaintiff potentially had meritorious claims, it is far

22    from certain that she would have prevailed on those claims, given recent unfavorable case law

23    and the difficulty in proving defendant's willful conduct.

24    2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk of

25            Maintaining Class Action Status Through Trial

26        "[T]here is a strong judicial policy that favors settlements, particularly where complex

27    class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

28    2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). As a result,

"[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059 KJM AC P, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 09–00704, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

Here, plaintiff contends that absent a settlement, the issues of standing and willfulness as described above would have resulted in prolonged litigation that "ha[d] the likely potential to take years and be costly." (Doc. No. 22 at 21.) Moreover, class certification remains highly contested between the parties, and absent a settlement, would likely result in continued litigation, delays, and potential appeals. (*Id.*) By contrast, the proposed settlement in this action provides compensation that is available now, without the additional time and risk of a decision that would likely be subject to a lengthy appeal process.

3. <u>The Amount Offered in Settlement</u>

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the proposed settlement is for $195,000. Plaintiff notes that the settlement's maximum award of $250 per class member amounts to 250 percent of the minimum statutory damages ($100), and 25 percent of the maximum statutory damages ($1000). (Doc. No. 22 at 23.) If each of the 4,422 credit card and debit card transactions represents unique individuals, which to the court appears to be highly unlikely, plaintiff and the class would be entitled to minimum statutory damages of $100 per class member, or $442,200 total. If each individual received the maximum statutory damages amount of $1000, defendant's maximum liability

8

would be $4,422,000. The proposed settlement of $195,000 thus represents approximately 44 percent of plaintiff's minimum possible recovery, and 4.4 percent of plaintiff's maximum possible recovery. Because of the concrete risks attendant with litigation as articulated above, and the limited recovery available given that defendant ceased all operations in January 2016 (*id.* at 1–2), the court finds that the amount offered in settlement weighs in favor of final approval of the settlement.

4.      Extent of Discovery Completed

The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

In this case, only informal, rather than formal, discovery was exchanged between the parties. (Doc. No. 22 at 22.) Plaintiff asserts that, nonetheless, "a substantial amount of information was obtained and exchanged, including specific figures concerning transactions during the Settlement Class Period." (*Id.*) Class counsel represents that this information took time and effort to obtain and was critical to informing the settlement discussions. (*Id.*) Based on these representations by counsel, the court is satisfied that the parties' negotiation constituted genuine, informed, arm's length bargaining.

5.      Experience and Views of Counsel

Class counsel filed a declaration in support of the motion for final approval, detailing extensive experience acquired over more than eleven years of prosecuting FACTA cases. (Doc. No. 25 at ¶ 10.) Among other qualifications, attorney Yedalian notes that he has been appointed class counsel on "several occasions" in both state and federal court, and has successfully prosecuted to conclusion fifteen FACTA cases on a class basis. (*Id.* at ¶¶ 40, 45.) Over the years he has conducted extensive discovery and investigations, has successfully defeated motions for summary judgment in FACTA cases, and has served as lead counsel in FACTA class actions

before the Judicial Panel on Multidistrict Litigation. (*Id.* at ¶¶ 50, 52, 53.) Attorney Yedalian further declares that aside from litigation, he also advocates for consumer protection through legislative and grassroots advocacy. (*Id.* at ¶¶ 57–58.) Based on his experience and qualifications, investigation of the disputed factual and legal issues involved in this case, and evaluation of the risks of continued litigation, attorney Yedalian concludes that the settlement is fair and reasonable. (*Id.* at ¶¶ 35–37.) Class counsel's experience and opinions weigh in favor of final approval of the settlement.

      6.        <u>Presence of a Governmental Participant</u>

On November 20, 2017, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), counsel for defendant provided written notice to the Attorney General of the State of California and the Attorney General of the United States that the parties to this lawsuit had reached a proposed settlement. (Doc. No. 20 at ¶ 1.) More than 90 days have elapsed since notice was given, and this court has received no objections to this settlement from state or federal officials, nor have any governmental entities sought to intervene as demonstrated by the court's docket in this case. 28 U.S.C. § 1715(d); *see also California v. IntelliGender, LLC*, 771 F.3d 1169, 1172–73 (9th Cir. 2014) ("§ 1715 prohibits a court from ordering final approval of a proposed settlement until 90 days after the appropriate government officials were notified."). Because there are no separate governmental participants involved in the action, consideration of this factor is neutral in the court's evaluation of the settlement. *See Johnson*, 2016 WL 3027744, at *5.

      7.        <u>Reaction of the Class to Proposed Settlement</u>

The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

According to the declaration of Christopher Q. Longley on behalf of Atticus Administration, LLC, no member of the class has filed an objection to the settlement before the court. (Doc. No. 24 at ¶ 8.) Similarly, no class members appeared at the final fairness hearing to

raise any objections to the settlement.  Accordingly, consideration of this factor weighs significantly in favor of granting final approval.

8.    Subtle Signs of Collusion

The court now turns to a review of whether any of the "more subtle signs" of collusion noted by the Ninth Circuit are present here.  *See In re Bluetooth*, 654 F.3d at 947.  The award of attorneys' fees sought here—one-third of the settlement fund—is on the high end of amounts typically awarded in the Ninth Circuit.  *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704, 2011 WL 5511767 AWI JLT, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)).  That said, the proposed attorneys' fees award is not disproportionate to the monetary distribution that the class and the *cy pres* beneficiary will receive.  In addition, there is no reversionary clause in the settlement agreement, and any residue will be distributed *cy pres* to the designated beneficiary, Legal Assistance for Seniors, a 501(c)(3) charity.

However, the settlement agreement does include a "clear sailing" provision, in which defendant has agreed not to object to, oppose, or otherwise contest class counsel's award of attorneys' fees or costs.  (Doc. No. 25-1 at ¶ 19.)  Although the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class," *In re Bluetooth*, 654 F.3d at 948 (citation omitted), the existence of a clear sailing provision is not necessarily fatal to final approval.  Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class."  *Id.* (citing *Staton*, 327 F.3d at 954).  In the analysis of attorneys' fees below, the court finds that the requested fees are justified and do not betray the class's interests.

On balance, the court is satisfied that the settlement is not the product of collusion, and therefore concludes that the settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).

/////

11

## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE PAYMENTS

### A. Attorneys' Fees

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

Because this case is premised on federal question jurisdiction (Doc. No. 1 at 1), federal law governs the award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees."); *see also* 10 Fern M. Smith, *Moore's Federal Practice* Civil § 54.171 (2015) ("In cases within the district courts' federal-question jurisdiction, state fee-shifting statutes generally are inapplicable."). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino*, 290 F.3d at 1047. The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, class counsel seeks an award of attorney's fees equal to one-third of the settlement fund, or $65,000, which exceeds the 25 percent benchmark in this circuit. (Doc. No. 26 at 5.) Class counsel presents numerous reasons for awarding fees in the amount of one-third of the settlement fund: (i) a fee award of one-third of the total recovery is consistent with awards ordered by district courts within this circuit; (ii) class counsel achieved an exceptional result given the amount of recovery compared to the low number of transactions and the acute risks undertaken by class counsel; (iii) class counsel was only able to recover on a contingency basis for this action; and (iv) the lodestar cross check attests to the reasonableness of the negotiated fee request. (Doc. No. 26 at 5–14.) The court addresses each of counsel's arguments that it finds pertinent below.

Here, the total settlement is for $195,000, from which the attorney's fees and costs, incentive payment, and administration costs will be deducted, leaving an estimated $112,839.22 to be distributed evenly among the class members. As of July 14, 2018, the deadline for class members to submit a claim, the settlement administrator had received 55 valid claims. (Doc. No. 28 at ¶¶ 5–6.) Because the settlement provides for a maximum pro-rata share of $250 to each class member, these class members will receive $250 each—an extraordinary value in proportional terms, given the low number of transactions. Moreover, the residue, amounting to approximately $99,089.22, will be awarded to the designated *cy pres* beneficiary, Legal Assistance for Seniors. James Treggiari, the Executive Director of Legal Assistance for Seniors, previously submitted a declaration in this action stating that seniors "are a class of consumers who are particularly vulnerable to consumer fraud, including identity theft scams." (Doc. No. 18 at ¶ 5.) The Treggiari Declaration further attests that Legal Assistance for Seniors provides legal

representation and other advocacy services for seniors who fall victim to financial elder abuse, and provides counseling and community education to seniors to help protect them from consumer fraud and identity theft, including credit card or debit card fraud and other scams. (*Id.* at ¶¶ 6–8.) Thus, the class will indirectly benefit from the *cy pres* award, as the residue will benefit an organization serving the very consumers the FACTA statute was designed to protect. *See Nachshin v. AOL*, 663 F.3d 1034, 1040 (9th Cir. 2011) (holding that *cy pres* awards "must be guided by (1) the objectives of the underlying statutes and (2) the interests of the silent class members.").

Class counsel also faced substantial risk of outright dismissal of this action given the recent, unfavorable case law regarding Article III standing requirements in other, similar FACTA cases. (Doc. No. 26 at 7–9.) Moreover, class counsel notes that Congress could have again legislated temporary immunity for FACTA violations, as it did in 2008 when it enacted the Credit and Debit Card Receipt Clarification Act ("Clarification Act"), which retroactively granted temporary immunity from statutory damages for FACTA violations involving expiration dates printed between December 4, 2004 and June 3, 2008. (*Id.* at 9.) The Clarification Act thus provided retroactive immunity from liability for all then-pending FACTA expiration date cases, resulting in the dismissal of many FACTA class actions without any recovery at all for consumers. (*Id.*) Class counsel asserts that he personally experienced significant financial setback in various FACTA expiration date cases following the enactment of the Clarification Act, and undertook the risk that Congress could again pass similar legislation that would affect the present action. (*Id.*)

Class counsel here also faced a substantial risk of non-payment, which favors approval of the requested award. Having accepted the matter on a purely contingent basis, class counsel would not have been compensated absent a recovery for the class. (Doc. No. 26 at 10–11.) "[A]ttorneys whose compensation depends on their winning the case[ ] must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051 (quoting *In re Wash. Pub. Power Supply*, 19 F.3d at 1300–01). This, too, supports an above-benchmark fee award.

Finally, a lodestar cross-check further bolsters the attorneys' fees request in this case. The lodestar figure is calculated by multiplying the number of hours the attorney reasonably expended on the litigation by the reasonable hourly rate. *In re Bluetooth*, 654 F.3d at 941.

This court has previously accepted as reasonable for lodestar purposes hourly rates between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Fresno division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (concluding that Fresno division rates are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners). In recognition of class counsel's more than eleven years of experience prosecuting FACTA cases (Doc. No. 25 at ¶ 10), the court finds the $650 hourly rate provided by class counsel appropriate, at least for lodestar cross-check purposes.

Class counsel's declaration, and the attorney time records submitted for *in camera* review, are also sufficient to establish the number of attorney hours spent on this matter. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014)). Here, counsel represents that he has devoted 107.08 hours on this case, and expects to devote at least an additional 10 hours thereafter for work related to the final approval hearing and the continuing administration of the settlement. (Doc. No. 25 at ¶ 70; Doc. No. 26 at 11.) Multiplying the total hours counsel represented he will spend on this case by the applicable hourly rate yields a lodestar figure of $76,102. (Doc. No. 25 at ¶ 70.)

Class counsel requests an award of one-third of the $195,000 settlement fund, or $65,000. Thus, counsel's requested award is less than the lodestar, even without the application of a multiplier,[1] which further supports the reasonableness of the requested fee amount.

For the reasons set forth above, the court concludes that a sufficient showing has been made to award more than the benchmark percentage in attorneys' fees in this case, and finds the request for one-third of the settlement fund to be awarded as attorneys' fees is reasonable in this case.

**B. Expenses of Class Counsel**

Additionally, class counsel seeks to recover the costs expended on this litigation. Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client

---

[1] Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, courts typically apply a lodestar multiplier. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting NEWBERG).

and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id.*

Attorney Yedalian seeks reimbursement of costs in the amount of $1,082.78, which includes costs resulting from filing fees, service of process fees, postage, and travel expenses related to the final approval hearing. (Doc. No. 26 at 14; Doc. No. 25 at ¶¶ 74–75.) The court finds all of these expenses incurred to be reasonable and will approve their reimbursement.

## C. Incentive Award

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, plaintiff seeks an incentive payment of $4,000 for her service as a class representative in this action. In its order granting preliminary approval of the settlement, the court preliminarily approved an incentive award of *up to* $4,000, subject to further review at the final fairness hearing of "the specific amount of time plaintiff spent on the litigation, the particular risks and burdens carried by plaintiff as a result of the action, or the particular benefit that plaintiff provided to counsel and the class as a whole throughout the litigation." (Doc. No. 21 at 9.)

*/////*

Class counsel contends that the $4,000 requested incentive award is reasonable because, but for plaintiff's willingness to step forward and prosecute the interests of the other class members, it is likely that the interests of the settlement class would not have been prosecuted or benefited.  (Doc. No. 26 at 15.)  Further, class counsel represents that plaintiff invested approximately 5–10 hours of personal time and effort by reviewing relevant documents, providing input on various rounds of settlement negotiations, consistently communicating with class counsel through the pendency of this litigation, and potentially subjecting herself to potentially intrusive discovery and/or liability for defense costs in the event the litigation was unsuccessful.  (*Id.* at 15–16.)

In *Staton*, the Ninth Circuit held it an abuse of discretion for a district court to approve a settlement that, among other terms, awarded to each class representative "an amount of damages on average sixteen times greater than the amount each unnamed class member would receive." 327 F.3d at 946.  Plaintiff's request for $4,000 here is precisely sixteen times greater than the maximum award each unnamed class member could receive, and four times greater than the maximum statutory amount for willful violations of FACTA.  *See* 15 U.S.C. § 1681n(a)(1)(A) (providing for damages of "not less than $100 and not more than $1,000").  Moreover, based on class counsel's estimate that plaintiff expended 5–10 hours assisting in this matter, plaintiff is seeking the equivalent of an hourly rate between $400 to $800 per hour.  Although plaintiff's litigation of this action resulted in a favorable outcome for the class members, there is no evidence that plaintiff is entitled to an hourly rate that could exceed even that of class counsel. This action resulted in preliminary settlement in less than one year's time, and without the propounding of formal discovery, the filing of any disputed motions, or conducting of mediation.[2]

---

[2] In this regard, the present case is readily distinguishable from *In re Toys "R" Us–Delaware, Inc.*, the one published FACTA case plaintiff cites in support of the incentive award requested here.  (Doc. No. 26 at 17–18.)  There, the court awarded a $5,000 incentive payment to each of the class representatives in a settlement following seven years of litigation, which included multiple mediation sessions, a motion for summary judgment, and an interlocutory appeal to the Ninth Circuit.  *See In re Toys "R" Us–Delaware, Inc.*, No. CV 08-01980 MMM (FMOx), 295 F.R.D. 438, 444–45, 459 (C.D. Cal. Jan. 17, 2014).  Plaintiff has also cited to several unpublished decisions in which the class representative was awarded a $5,000 incentive payment.  (Doc. No. 25 at ¶ 84.)  These cases, however, are similarly inapposite considering the procedural history of

Though plaintiff may have assumed some personal financial risk in prosecuting this action, as class counsel contends, there is no suggestion that plaintiff risked any retaliation or reputational harm. *See Torres v. Pet Extreme*, No. 1:13-cv-01778-LJO-SAB, 2015 WL 224742, at *14 (E.D. Cal. Jan. 15, 2015) ("[T]he allegations here regarding violations of FACTA are not the type that would be expected to lead to intrusive discovery being propounded to Plaintiff; nor have the allegations in this action subjected Plaintiff to any personal notoriety in bringing these claims."). The court concludes that the record before it does not reveal sufficient justification for the requested $4,000 incentive payment.

The court has reviewed incentive payments awarded in other FACTA class actions with more analogous procedural history to the present case. *See, e.g.*, *Torres*, 2015 WL 224752, at *15 (awarding $2,500 incentive payment in FACTA case where "action was filed less than one year prior to settlement, extensive discovery was not conducted, and the parties did not participation in mediation, nor were any disputed motions filed"); *Tchoboian v. Fedex Office & Print Servs., Inc.*, No. SA CV10-01008 JAK (MLGx), 2014 WL 10102826, at *15 (C.D. Cal. Mar. 25, 2014) (awarding incentive payment of $1,700 to each class representative in FACTA case where "their required time investment was modest"); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 258 (E.D. Pa. 2011) (awarding $1,000 incentive payment in FACTA case where "there [was] no evidence that Plaintiff was exposed to any personal risk or unwelcomed adversity in connection

---

this case and the estimated expenditure of time by the class representative here. *See* Notice of Motion and Motion for Attorney's Fees, Costs, and Incentive Awards at 2, *McGee v. Ross Stores, Inc.*, No. 3:06-cv-07496-CRB (N.D. Cal. Dec. 12, 2008) (plaintiff and several defendant witnesses were deposed, defendant filed a motion for summary judgment, and parties participated in mediation); Notice of Motion and Motion for Award of Attorney's Fees and Costs to Class Counsel and Incentive Payment to the Class Representative at 9–12, *Tchoboian v. Parking Concepts, Inc.*, No. 8:09-cv-00422-DMG-AN (C.D. Cal. Aug. 31, 2010) (plaintiff devoted approximately 45–50 hours to the litigation and was deposed); Notice of Motion and Motion for Award of Attorney's Fees and Costs to Class Counsel and Incentive Payment to the Class Representative at 7–9, *Jarchaffian v. Am. Multi-Cinema, Inc.*, No. 2:09-cv-03434-JHN-AJW (C.D. Cal. June 29, 2011) (plaintiff devoted approximately 35 hours to the litigation); Notice of Motion and Motion for Award of Attorney's Fees and Costs to Class Counsel and Incentive Payment to the Class Representative at 6–9, *Sakamoto v. One Parking, Inc.*, No. 8:11-cv-01249-MLG (C.D. Cal. Apr. 16, 2012) (plaintiff devoted approximately 55–60 hours to the litigation and was deposed).

with this action" and "Plaintiff admit[ted] that there was little effort or participation actually required of her"); *Palamara v. Kings Family Rests.*, No. 07-317, 2008 WL 1818453, at *5–6 (W.D. Penn. Apr. 22, 2008) (awarding $2,000 incentive payment in FACTA case that reached settlement approximately six months after it was filed). Considering the incentive payments awarded in these more comparable FACTA cases, the court concludes that an incentive award of no more than $3,000 is appropriate under the unique circumstances presented by this case.

**CONCLUSION**

For the reasons stated above,

1.    Plaintiff's motion for final approval of the class action settlement (Doc. No. 22) is granted, the settlement class is certified, and the court approves the settlement as fair, reasonable, and adequate;

2.    Chant Yedalian is confirmed as class counsel; plaintiff Cirena Torres is confirmed as class representative; and Atticus Administration, LLC is confirmed as the settlement administrator;

3.    Plaintiff's motion for attorneys' fees, costs to class counsel, and incentive payment to the class representative (Doc. No. 26) is granted, and the court awards the following sums:

    a.    Class counsel shall receive $65,000 in attorneys' fees, and $1,082.78 in costs; and

    b.    Named plaintiff Cirena Torres shall receive $3,000 as an incentive payment;

4.    The parties are directed to effectuate all terms of the settlement agreement (Doc. No. 25-1) and any deadlines or procedures for distribution therein, including distribution of any residue to the designated *cy pres* beneficiary Legal Assistance for Seniors;

/////

/////

/////

5. This action is dismissed with prejudice in accordance with the terms of the settlement agreement, with the court specifically retaining jurisdiction to consider any further applications arising out of or in connection with the settlement; and

6. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**July 20, 2018**__

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE